**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FARSHAD GHIASSI,<br><br>   Petitioner,<br><br>v.<br><br>RON MURRAY, ET AL.,<br><br>   Respondents. | Case No. 1:26-cv-01179 JLT SKO<br><br>ORDER GRANTING REQUEST FOR PRELIMINARY INJUNCTION AND REFERRING MATTER TO ASSIGNED MAGISTRATE JUDGE<br><br>(Doc. 3) |

Before the Court is Farshad Ghiassi's request for a temporary restraining order (Doc. 3), filed with his petition for writ of habeas corpus under 28 U.S.C. § 2241, (Doc. 1). Having evaluated the TRO request (Doc. 3), Respondent's opposition (Doc. 8), and Petitioner's reply (Doc. 9), the Court converts the TRO into a preliminary injunction[1], **GRANTS** the PI, and **ORDERS** Petitioner's immediate release from custody. The Court **REFERS** the matter to the assigned magistrate judge for a determination on the merits.

**I.    FACTUAL & PROCEDURAL BACKGROUND**

Petitioner is a 52-year-old national of Iran who immigrated to the United States at least a

---

[1] When the Court set a briefing schedule on the motion, it ordered the parties to state their position as to whether the motion for temporary restraining order should be converted to a preliminary injunction without further briefing and whether the parties sought a hearing on the motion. (Doc. 5.) Neither party objected to converting the motion to one for a preliminary injunction or requested a hearing. (Doc. 8 at 2; Doc. 9.) Given that the standards for issuing a temporary restraining order and a preliminary injunction are the same, and Respondents had notice and opportunity to respond, (Doc. 8), the Court converts Petitioner's motion to a motion for preliminary injunction.

1

decade ago.² (*See* Doc. 3 at 2–3.) While in the United States, Petitioner served time in prison for a crime he committed.³ Following his release from criminal custody, ICE detained the Petitioner on or around 2016 to effectuate a final order of removal under 8 U.S.C. § 1231(a)(6) as a noncitizen with a criminal conviction.⁴ (*See* Doc. 3 at 2; Doc. 8 at 1.) Petitioner asserts that while in ICE custody, Respondents were unable to secure travel documents to Iran. (Doc. 3 at 2.) As a result, sometime in 2016, Petitioner was released on an order of supervision ("OSUP") because his "[r]emoval was deemed not reasonably foreseeable." (Doc. 3 at 2.) Following his release from ICE custody, and for the past ten years, Petitioner "complied with all reporting requirements," "[a]ttended ICE check-ins," "[m]aintained community residence," and "[n]ever absconded or violated supervision." (Doc. 3 at 2–3.) Respondents offer no argument or evidence to the contrary. (*See* Doc. 8.) There is also no indication in the record that Petitioner has committed any new crimes in the past ten years. (Docs. 1, 3, 8, & 9.)

On January 24, 2026, ICE arrested the Petitioner at his residential community in Milpitas, California and placed him in detention at the Mesa Verde Detention Center, where he remains. (Doc. 1 at 2–3; Doc. 3 at 3.) Petitioner argues that his Fifth Amendment due process rights have been violated and that he is entitled to immediate release from ICE custody. (Docs. 1, 3.) Namely, Petitioner argues that Respondents violated the due process clause when they re-detained him without a warrant, notice, or hearing after ten years of release on supervision. (Doc. 1 at 1; Doc. 3 at 2.) According to Petitioner, there is no change in circumstances to justify his re-detention because he has no OSUP violations and his removal to Iran is not reasonably

---

² Petitioner does not indicate exactly when he entered the United States, or what his immigration status was at that time. (*See* Doc. 3.) He says only that he has been in the United States for at least a decade. (*Id*. at 2.)

³ The parties do not provide details regarding Petitioner's conviction, such as a description of the crime or the exact date of his conviction/incarceration, though Petitioner suggests he was released from prison before 2016 and subsequently detained by ICE around 2016. (*See* Doc. 3 at 2; Doc. 8.)

⁴ The parties do not specify the date Petitioner was taken into ICE custody following his release from criminal custody, or how long he was in ICE custody. (*See* Docs. 3, 8.) Instead, Petitioner suggests he was detained by ICE sometime on or around 2016, released sometime in 2016, and remained at liberty for the past ten years until he was re-detained on January 24, 2026. (Doc. 3 at 2–3.)

1    foreseeable.[5]  (Doc. 1 at 2–3; Doc. 3 at 2–3.)

2    Respondents offer no argument or evidence to suggest that ICE provided a written notice, warrant, or hearing upon Petitioner's re-detention. (Doc. 8.) Respondents do not claim any OSUP violations, new criminal violation or any other factual change as the reason for his re-detention. (*Id*.) Instead, Respondents assert that Petitioner's re-detention is justified to effectuate his removal to Iran due to his "*prior* criminal conviction." (*Id*. (emphasis added.).) Specifically, Respondents argue that, under *Zadvydas v. Davis*, 533 U.S. 678, 682, 701 (2001), Petitioner is unlikely to succeed on the merits because (1) he has not been detained for more than six-months and (2) he fails to show that his removal is not reasonably foreseeable. (Doc. 8 at 1.) Respondents further argue that under 8 C.F.R. § 236.1(c)(9), ICE has discretion to revoke an order of supervised release at any time. (*Id*. at 2.) The matter is now ripe for decision.

## II.   JURISDICTION

Under 28 U.S.C. § 2241, the Court has the authority to determine a petition for writ of habeas corpus in which the petitioner asserts he is being held in custody "in violation of the Constitution or laws or treaties of the United States." "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Petitioner seeks his immediate release from custody, which he contends violates the Fifth Amendment Due Process Clause under the United States Constitution. (Doc. 1 at 5; Doc. 3 at 3.) Thus, he properly invokes the Court's habeas jurisdiction.

The INA limits judicial review in many instances. Though 8 U.S.C § 1252(g) precludes this Court from exercising jurisdiction over the executive's decision to "commence proceedings, adjudicate cases, or execute removal orders against any alien," there is no removal order at issue here and the central issue is Petitioner's continued detention. Thus, this Court has the authority to review Respondent's termination of Petitioner's release. *See Jennings v. Rodriguez*, 583 U.S.

---

[5] Petitioner also asserts a claim for deliberate medical indifference. (Doc. 1 at 5.) Petitioner argues that he has a serious medical need, which requires steady medication and that ICE has withheld his medication for multiple days, lost prescriptions, and altered his dosages. (Doc. 1 at 3–4; Doc. 3 at 3–4.) Given that Petitioner's due process claim serves as the basis for immediate release, the Court declines to address this claim.

281, 294 (2018) (holding that § 1252(g) precludes judicial review only as to the three areas specifically outlined in the subsection); *see also Reno v. American–Arab Anti–Discrimination Comm.*, 525 U.S. 471, 482 (1999).

**III.   ANALYSIS**

The standard for issuing a TRO is the same as the standard for issuing a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co*., 240 F.3d 832, 839 n. 7 (9th Cir. 2001) (explaining that the analysis for temporary restraining orders and preliminary injunctions is "substantially identical"). When seeking a TRO or PI, the plaintiff must establish: (1) they are "likely to succeed on the merits" of their claims, (2) they are "likely to suffer irreparable harm in the absence of a preliminary injunction," (3) "the balance of equities tips in [their] favor" and (4) "an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The moving party has the burden to "make a showing on all four prongs" of the *Winter* test to obtain a preliminary injunction. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). Thus, the moving party has "the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997); *Hecox v. Little*, 104 F.4th 1061, 1073 (9th Cir. 2023).

The Court may weigh the request for a preliminary injunction with a sliding-scale approach. *Alliance*, 632 F.3d at 1135. Accordingly, a stronger showing on the balance of hardships may support the issuance of a preliminary injunction where there are "serious questions on the merits . . . so long as the plaintiff also shows that there is a likelihood of irreparable injury, and that the injunction is in the public interest." *Id*. "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter*, 555 U.S. at 24. Preliminary injunctions are intended to "merely [] preserve the relative positions of the parties until a trial on the merits can be held, and to balance the equities at the litigation moves forward." *Lackey v. Stinnie*, 604 U.S. ___, 145 S. Ct. 659, 667 (2025) (citations omitted).

The status quo refers to "the last uncontested status which preceded the pending controversy." *Tanner Motor Livery, Ltd. v. Avis, Inc*., 316 F.2d 804, 809 (9th Cir. 1963) (quoting *Westinghouse Elec. Corp. v. Free Sewing Mach. Co*., 256 F.2d 806, 808 (7th Cir. 1958)). In the Court's view, that is the status before Petitioner was arrested. *See Kuzmenko v. Phillips,* No. 25-

1  CV-00663, 2025 WL 779743, at *3 (E.D. Cal. Mar. 10, 2025) (granting a temporary restraining
2  order requiring immediate release of the petitioner back to home confinement from custody, as a
3  restoration of the status quo).

### A. Likelihood of Success on the Merits

This first factor "is the most important" under *Winter*, and "is especially important when a plaintiff alleges a constitutional violation and injury." *Baird v. Bonta*, 81 F.4th 1036, 1041 (9th Cir. 2023). Petitioner argues he is likely to succeed on the merits of his due process claim because ICE's revocation of his supervised release failed to comply with applicable regulations and violated his right to an articulated explanation and hearing. (*See* Doc. 1 at 5; Doc. 3 at 4–5; Doc. 9 at 2.) Petitioner has shown he is likely to succeed on the merits of his due process claim.

1. <u>Detention Under 8 U.S.C. §1231(a)(6) and Revocation of Supervised Release Under 8 C.F.R. § 241.13(i)(2)</u>

Under 8 U.S.C. § 1231(a)(6), "[a]n alien ordered removed who is inadmissible under section 1182 of this title, removable under section . . . 1227(a)(2) . . . of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, *may be detained beyond the removal period* and, if released, shall be subject to . . . terms of supervision." 8 U.S.C. § 1231(a)(6) (emphasis added); 8 U.S.C.§ 1227(a)(2) (providing that a noncitizen convicted of certain crimes, such as crimes of moral turpitude or aggravated felonies, is deportable). Respondents argue that Petitioner is deportable due to a prior criminal conviction, and this his detention is presumptively reasonable under 8 U.S.C. § 1231(a)(6) because Mr. Ghiassi has been detained for less than six months. (Doc. 8 at 1.) Respondents rely on *Zadvydas v. Davis*, where the Supreme Court held that under Section 1231(a)(6), the government may detain a removable noncitizen beyond the 90-day statutory removal period, but only for so long as "*reasonably necessary* to secure the alien's removal." *Zadvydas*, 533 U.S. at 682; *see also* 8 U.S.C. § 1231(a)(1)(A) ("[W]hen an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days"). The Court explained that the statute contains an implicit reasonable time limitation, which is presumptively six months, after which the noncitizen bears the burden of proving that

1 there is "no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*,

2 533 U.S. at 682, 701.

3     However, *Zadvydas* does not applicable to Petitioner's circumstances. *Zadvydas* dealt

4 with the prolonged detention of two noncitizens—who had been taken into INS custody following

5 their release from prison and upon the issuance of a final order of removal—but who were

6 *continuously held* in INS custody beyond the statutory 90-day removal period, not *released* on an

7 order of supervision as Petitioner was here. *Zadvydas*, 533 U.S. at 684–686; (Doc. 3 at 2.) As the

8 court in *Nguyen* best explained:

> This case is not about ICE's authority to detain in the first place upon an issuance of a final order of removal as in *Zadvydas*. This case is about ICE's authority to *re-detain* [the petitioner] after he was issued a final order of removal, detained, and subsequently released on an OSUP. The DHS regulation, 8 C.F.R. § 241.13(i), applies to non-citizens in Petitioner's situation. *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 149 (D. Mass. June 20, 2025).

13 On numerous occasions, this Court and others, have adopted the reasoning set forth in *Nguyen*.

14 *See Escalante v. Noem*, No. 9:25-cv-00182-MJT, 2025 WL 2206113, at *3–4 (E.D. Tex. Aug. 2,

15 2025); *Hoac v. Becerra*, No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *3 (E.D. Cal. July

16 16, 2025); *Phan v. Beccerra*, No. 2:25-cv-01757-DC-JDP, 2025 WL 1993735, at *3 (E.D. Cal.

17 July 16, 2025); *Yan-Ling X. v. Lyons*, No. 1:25-cv-01412-KES-CDB, 2025 WL 3123793, at *3–5

18 (E.D. Cal. Nov. 7, 2025); *J.L.R.P. v. Wofford*, No. 1:25-cv-01464-KES-SKO, 2025 WL 3190589,

19 at *4–5 (E.D. Cal. Nov. 14, 2025); *Huang v. Albarran*, No. 1:25-cv-01308-JLT-EPG, 2026 WL

20 279888, at * 4 (E.D. Cal. Feb. 3, 2026). These cases explain that instead of *Zadvydas*, the

21 regulation at 8 C.F.R. § 241.13(i)(2) apply to noncitizens in Petitioner's situation and outline the

22 procedures to be followed. As *Escalante* explained:

> Section 241.13(i)(2) entitled "Revocation for removal" provides that "the Service may revoke an alien's [supervised] release under this section and return the alien to custody if, on account of changed circumstances, *the Service determines* that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2) (emphasis added). Section 241.4(b)(4) entitled "*Service determination under 8 C.F.R. 241.13*" states that, after supervised release under section 241.13, "*if the Service subsequently determines*, because of a change in circumstances, that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future to [the country to

> which the alien was ordered removed or] a third country, the alien shall again be subject to the custody review procedures under this section." 8 C.F.R. § 241.4(b)(4) (emphasis added).
>
> These regulations clearly indicate, upon revocation of supervised release, it is the Service's burden to show a significant likelihood that the alien may be removed. Other cases have indicated the same upon revocation of release. *See Nguyen v. Hyde*, [788 F. Supp. 3d 144, 149–150] (D. Mass. June 20, 2025) (finding *Zadvydas* 6-month presumption not applicable where alien is "re-detained" after having been on supervised release and that respondents failed to meet their burden to show a substantial likelihood of removal is now reasonably foreseeable); *Tadros v. Noem*, No. 25-cv-4108, 2025 WL 1678501 (D. N.J. June 13, 2025) (finding 6-month presumption had long lapsed while petitioner was on supervised release and it is respondent's burden to show removal is now likely in the reasonably foreseeable future). Imposing the burden of proof on the alien each time he is re-detained would lead to an unjust result and serious due process implications.

*Escalante*, 2025 WL 2206113, at *3–4.

Likewise, 8 C.F.R. § 241.13(i)(2) applies to this case. On or around 2016, Petitioner was ordered removed following his criminal conviction and went into ICE custody following his release from prison. ICE was unable to remove him, so he was released on an order of supervision. Then, ICE re-detained him years later to purportedly to remove him though without any showing that it has secured travel documents. (*See* Doc. 3 at 2–3; Doc. 8.) Respondents also fail to dispute Petitioner's assertion that for the past ten years he has fully complied with OSUP.[6] (*See* Doc. 8.) These facts show that § 241.13(i)(2) applies here; therefore, Respondents bear the burden of showing Petitioner's removal is significantly likely to occur in the reasonably foreseeable future. In revoking release, Respondents must also comply with the procedures set forth in 8 C.F.R. § 241.13(i)(3). *J.L.R.P.*, 2025 WL 3190589, at *6–7.

        *a.*    *Respondents' Failure to Show Significant Likelihood of Removal Under 8 C.F.R. § 241.13(i)(2) Violates Due Process.*

"The phrase 'significant likelihood' requires something more than a mere possibility that removal will occur. Evidence that 'there is at least some possibility that' the designated country

---

[6] Because Respondents do not dispute Petitioner's assertions regarding compliance with OSUP, the Court finds that 8 C.F.R. § 241.13(i)(1), which provides that any "alien . . . released under an order of supervision . . . who violates any of the conditions of release may be returned to custody" and held "for an additional six months . . . to effect the alien's removal" is not at issue.

7

of removal 'will accept Petitioner at some point . . . is not the same as a significant likelihood that [he] will be accepted in the reasonably foreseeable future.'" *Yan-Ling X.*, 2025 WL 3123793, at *4 (citations omitted). The plain language of § 241.13(i)(2) does not allow a court in the first instance to make the required individualized finding. *Hoac*, 2025 WL 199377, at *3; *Nguyen*, 788 F. Supp. 3d at 150 (quoting *Kong v. United States*, 62 F.4th 608, 620 (1st Cir. 2023)). Instead, the court should review ICE's determination using the factors set forth in 8 C.F.R. § 241.13(f), which are meant to instruct ICE. *Hoac*, 2025 WL 199377, at *3. The § 241.13(f) states:

> [T]he history of the alien's efforts to comply with the order of removal, the history of the Service's efforts to remove aliens to the country in question or to third countries, including the ongoing nature of the Service's efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question. Where the Service is continuing its efforts to remove the alien, there is no presumptive period of time within which the alien's removal must be accomplished, but the prospects for the timeliness of removal must be reasonable under the circumstances.

Respondents cannot demonstrate changed circumstances showing a significant likelihood that Petitioner will be removed to Iran or a third country. (*See* Doc. 8 at 2.) Respondents state:

> Although his removal is not currently scheduled and Iran has yet to issue travel documents, the removal process takes time, and removal (possibly to a third country if necessary) involves processes to assure the Petitioner is not being sent to a receiving country where he may also fear torture. The fact his detention "does not have a certain end date does not change the analysis." *Diouf v. Mukasey*, 542 F.3d 1222, 1233 (9th Cir. 2008) (citing *Prieto-Romero*, 534 F.3d at 1063).

(Doc. 8 at 2.) This is hardly enough to show a significant likelihood of removal. Assessing ICE's "ongoing . . . efforts to remove [the] alien," this Court cannot conclude that Petitioner's removal is reasonably foreseeable. 8 C.F.R. § 241.13(f). Respondents concede that "removal is not currently scheduled." (Doc. 8 at 2.) Respondents also provide no evidence to show what steps they have taken to remove the Petitioner, such as contacting the Iranian or other third country Embassy/Consulate to initiate the process. (*Id*.) Though Respondents state that "Iran has yet to issue travel documents," they fail to explain what the government has done thus far to obtain such documents. (*Id*.) Instead, Respondents argue that "the removal process takes time," but do not

offer an estimated timeline of removal. (*Id.*) Respondents also suggest that the government will only "*possibly*" seek third-country removal for the Petitioner "*if necessary*." (*See id.* (emphasis added).) According to Petitioner, when his counsel contacted ICE requesting confirmation of "[w]hether travel documents exist" and "[w]hether Iran has agreed to repatriation," ICE did not respond. (Doc. 3 at 3.) Respondents do not dispute this. (Doc. 8.) This Court has previously held that the mere "intent to eventually complete a travel document request for Petitioner does not constitute a changed circumstance." *Hoac*, 2025 WL 1993771, at * 4; *Phan*, 2025 WL 1993735, at *5.

Turning to "the history of the Service's efforts to remove [the] alien[] to the country in question," Respondents also fail to meet their burden. 8 C.F.R. § 241.13(f). Sometime in 2016, ICE released the Petitioner from custody because it was unable to secure travel documents. (Doc. 3 at 2.) Yet, Respondents fail to "provide[] [] details about why that documentation could not be obtained in the past" and fail "to show why obtaining that particular documentation is more likely [to occur] this time around," which weighs in Petitioner's favor. *Liu v. Carter*, No. 25-3036-JWL, 2025 WL 1696526, at *3 (D. Kan. June 17, 2025). On three separate occasions, this Court has similarly found that past difficulties in obtaining travel documents suggest that removal is not reasonably foreseeable. *Hoac*, 2025 WL 1993771, at *4 (explaining that respondents' inability to remove petitioner in 2023 "due to § 1231(a)(2) concerns with travel documents" raised doubt that petitioner's removal was foreseeable); *Phan*, 2025 WL 1993735, at *5; *Huang*, 2026 WL 279888, at *6.

Considering the evidence, Respondents fail to show a significant likelihood of Petitioner's removal to Iran or any third country. Though the government has significant discretion to enforce immigration laws, it must do so consistent with the requirements of its own regulations and the Due Process Clause.[7] *Diaz v. Wofford*, No. 1:25-cv-01079-JLT-EPG, 2025 WL 2581575, at *7

---

[7] Respondents argue that under 8 CFR § 236.1(c)(9), "ICE has statutory discretion to revoke an [OSUP] at any time." (Doc. 8 at 2.) Even if true, ICE's exercise of discretion must comport with due process. *See Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017) ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process."); *Vargas v. Jennings*, No. 20-cv-5785-PJH, 2020 WL 5074312, at *2–3 (N.D. Cal. Aug. 23, 2020) (explaining that the government's authority to revoke release under 8 C.F.R. § 236.1(c)(9) is restrained upon a finding of a material change in circumstances) (citing *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 968 (N.D. Cal. 2019) and *Matter of*

(E.D. Cal. Sept. 5, 2025) (citations and quotations omitted).  Here, DHS's failure to follow its own procedural regulations constitutes a due process violation in this case.

      b.  *Respondents' Failure to Provide Notice and a Prompt Interview Under 8 C.F.R. § 241.13(i)(3) Violates Due Process*

Section 241.13(i)(3) provides that, "[u]pon revocation, the alien will be notified of the reasons for revocation of his or her release. The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification."  Respondents do not contest Petitioner's assertion that ICE failed to provide written notice or an explanation when they detained him.  (*See* Doc. 3 at 3; Doc. 8.)  Furthermore, there is no indication in the record that Petitioner ever received an informal interview promptly after his re-detention.  (Docs. 1, 3, 8, 9.)  Nor do Respondents explain why the government failed to provide a timely notification and interview.  "ICE, like any agency, has the duty to follow its own federal regulations." *J.L.R.P.*, 2025 WL 3190589, at *6 (internal citations and quotations omitted).  "Where an immigration regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute, like the opportunity to be heard, and ICE fails to adhere to it, the challenged action is invalid." *Id*. (internal citations and quotations omitted). Accordingly, the Court finds a due process violation on this ground as well. *Id. at* *7; see also Hoac*, 2025 WL 1993771, at *4 ("Because there is no indication that an informal interview was provided . . . [petitioner's] re-detention was unlawful.").

    2.  <u>Respondent's Failure to Provide a Pre-Deprivation Hearing Violates Due Process.</u>

Petitioner argues that the Due Process Clause bars ICE from re-detaining him without first providing a hearing.  (*See* Doc. 3 at 4.)  Many courts in this district have found that when a non-citizen subject to a final order of removal is released on OSUP and is re-detained years later, the non-citizen is entitled to a pre-deprivation hearing prior to detention due to an accrued liberty interest.  *See e.g., J.L.R.P.*, 2025 WL 3190589, at *8–10; *Alva v. Kaiser*, No. 25-cv-06676-RFL, 2025 WL 2419262, at *3–5 (N.D. Cal. Aug. 21, 2025).  In *J.L.R.P.*, this Court found that the petitioner was entitled to a bond hearing prior to re-detention because (1) petitioner had a

---

*Sugay*, 17 I&N Dec. 637, 640 (BIA 1981)).

significant private interest in remaining free from detention after being out of custody for nearly four years and built normal attachments to life (2) the risk of erroneous deprivation is high because 8 C.F.R. § 241.13 does not provide for review of ICE's reasons for revocation by a neutral arbitrator and (3) the government's interest in detaining petitioner without a hearing is low because in immigration court, custody hearings are routine with minimal costs. *J.L.R.P.*, 2025 WL 3190589, at *9–10 (citing the factors enumerated in *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976)). Similarly, in *Alva*, the court found a due process violation where the government detained a non-citizen with a final order of removal, released on OSUP for over six years, without a pre-deprivation hearing. *Alva*, 2025 WL 2419262, at *3–5.

For ten years, Petitioner lived at liberty in the United States. (Doc. 3 at 2, 5.) He "complied with all reporting requirements," "[a]ttended ICE check-ins," "[n]ever absconded or violated supervision," and there is no indication that he has committed further criminal violations. (*See* Doc. 3 at 2–3; Doc. 8.) Respondents do not dispute this. (*See* Doc. 8.) As such, there is no change in circumstances to justify his re-detention. Accordingly, in the event of re-detention, Petitioner has a right to a pre-deprivation hearing where the government bears the burden of showing that Petitioner poses a flight risk or danger to the community. *J.L.R.P.*, 2025 WL 3190589, at *9–10; *Alva*, 2025 WL 2419262, at *3–5.

Moreover, as part of a noncitizen's release under 8 C.F.R. § 241.13(h)(1), they are placed certain conditions of release "in order to <u>protect the public safety</u> and to promote the ability of the Service <u>to effect the alien's removal</u> as ordered, or removal to a third country, should circumstances change in the future." The order of supervision shall "include the <u>conditions that the alien obey all laws</u>" and "any other conditions that the HQPDU considers necessary to <u>ensure public safety</u> and <u>guarantee the alien's compliance with the order of removal</u>." *Id*. (emphasis added). ICE must have considered these conditions when releasing Petitioner in 2016, which suggests that ICE likely determined he was neither a flight risk nor danger to the community at that time.[8] *Id*. Yet, Respondents do not claim that Petitioner's re-detention is justified because he

---

[8] Under a related regulation 8 C.F.R. § 241.4(e), which also concerns the continued detention of inadmissible, criminal, and other aliens beyond the removal period, "[b]efore making any recommendation or decision to release a detainee, a majority of the Review Panel members, or the Director of the HQPDU

11

1  now poses a flight risk or danger.  (*See* Doc. 8.)

2  For these reasons, the Court finds that Petitioner is likely to succeed on the merits of his

3  due process claim.

### B. Irreparable Harm

As for the second *Winters* factor, it is "well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (citations omitted).  Because Petitioner is likely to succeed on the merits of his due process claim, he has "carried [his] burden as to irreparable harm."  *Id*. at 995.  As the Supreme Court has recognized, incarceration "has a detrimental impact on the individual" because "it often means loss of a job" and "disrupts family life."  *Barker v. Wingo*, 407 U.S. 514, 532–33 (1972).  Accordingly, the Court finds that Petitioner faces irreparable harm absent injunctive relief.

### C. The Balance of the Equities and Public Interest

Finally, the balance of the equities and the public interest tip in favor of granting injunctive relief.  When the government is the nonmoving party, "the last two *Winter* factors merge."  *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (citations omitted).  As discussed above, Petitioner has a strong interest in an individualized bond hearing and immediate release so he can exercise his rights under the Constitution and have an opportunity to abate the imminent harms described above.  Granting relief would not deprive the government of the opportunity to prove to a neutral decisionmaker whether Petitioner poses a threat to the community or a flight risk, or whether his removal is significantly likely to occur in the foreseeable future, such that detainment is necessary.

The public interest also weighs in Petitioner's favor.  "The public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has

---

in the case of a record review, must conclude that: (1) Travel documents for the alien are not available or . . . immediate removal, while proper, is otherwise not practicable; (2) The detainee is presently a non-violent person; (3) The detainee is likely to remain nonviolent if released; (4) The detainee is not likely to pose a threat to the community following release; (5) The detainee is not likely to violate the conditions of release; and (6) The detainee does not pose a significant flight risk if released." This suggests that when DHS releases a noncitizen subject to a final order of removal under either § 241.4 or § 241.13, DHS likely first determines that they are neither a flight risk nor danger.

recognized that the costs to the public of immigration detention are staggering." *Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (citing *Jorge M.F. v. Wilkinson*, No. 21-CV-01434-JST, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021)); *see also Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005). All this leads the Court to conclude that Petitioner has demonstrated a due process violation regarding the applicable statutes and regulations sufficient to warrant his immediate release and a bond hearing in the event of future re-detention.

### D. Bond

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Court has "discretion as to the amount of security required, if any," and it "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or his conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (citation modified). Because "the [Government] cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations," *Zepeda*, 753 F.2d at 727, the Court finds that no security is required here.

## IV. CONCLUSION AND ORDER

1. Petitioner's Motion for Temporary Restraining Order (Doc. 3) is converted into a Preliminary Injunction and is **GRANTED.**

2. Respondents are **ORDERED** to release Petitioner **IMMEDIATELY** under the conditions of his most recent order of supervision.

3. Respondents are **ENJOINED** from re-detaining petitioner unless there are material changed circumstances and a neutral decisionmaker determines that there is a significant likelihood of petitioner's removal in the reasonably foreseeable future, or Respondents demonstrate by clear and convincing at a pre-deprivation bond hearing before a neutral decisionmaker that Petitioner is a flight risk or danger to the community such that his physical custody is legally justified.

4. The matter is **REFERRED** to the assigned magistrate judge for consideration of the merits of the petition.

IT IS SO ORDERED.

Dated: __March 4, 2026__

UNITED STATES DISTRICT JUDGE

14